Filed 7/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DERRICK MYERS,<br><br>      Defendant and Appellant. | B249607<br><br>(Los Angeles County<br>Super. Ct. No. MA056625) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Daviann L. Mitchell, Judge. Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

_____

Derrick Myers appeals from a judgment entered following a jury trial in which he was convicted of second degree robbery of a motel, contending evidence of a prior robbery was inadmissible to prove common plan or design, intent, or absence of mistake under Evidence Code section 1101, subdivision (b). Myers also contends oral testimony of the contents of a surveillance video showing the robbery constituted inadmissible hearsay. We affirm.

**Statement of Facts**

From May 13, 2012 to May 16, 2012, Myers, a resident of San Bernardino, stayed at his niece's apartment in Lancaster. While there, he borrowed a red USC Trojans jacket and a bicycle.

Around 2:00 a.m. on May 16, 2012, Myers, wearing the red USC Trojans jacket, rode a bicycle up to the front door of the Inn of Lancaster. Christopher Hurst, the night clerk, unlocked the door electronically, and Myers entered and approached the counter where Hurst sat. Myers asked Hurst about the cost of a room, told him he would return with money, and left. Approximately 15 minutes later, Myers returned. He pressed what appeared to be money up to the glass door of the Inn and Hurst unlocked the door. Myers asked Hurst if he could get a room although he was unable to get enough money to pay the full price. When Hurst told him no, Myers stated, "Here's what I want you to do," put his hand into his jacket pocket, and pointed something at Hurst. He told Hurst to give him the money inside the cash register and ordered him not to look at him or he would shoot him. Frightened, Hurst put his hands up, took $194 in bills out of the cash register, and placed them on the counter. Myers took the money, instructed Hurst to open the door, and rode off on his bicycle. Hurst then called the sheriff's department and reported he had been robbed. Myers was later arrested.

An information charged Myers with second degree robbery (Pen. Code, § 211). The information also included the allegation that Myers had two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (Pen. Code, § 667.5, subds. (b)-(i), 1170.12, subds. (a)-(d)), two prior serious felony convictions (Pen. Code, § 667, subd. (a)(1)), and five prior prison terms (Pen. Code, § 667.5, subd. (b)).

Before trial, the prosecution moved to admit evidence of Myers's prior robbery of a San Bernardino donut shop under Evidence Code section 1101, subdivision (b). Defense counsel objected to its admission on the grounds that it was not probative of intent or a common plan and was highly prejudicial. The court overruled the objection and allowed the testimony.

At trial, an employee at the donut shop testified that at 11:45 a.m. on May 13, 2012, Myers walked into the shop and asked her about the price of various donuts and drinks. He then handed her a note that said, "give me all the money" and grabbed his waistband as if to show her the shape of a gun. He whispered to her "not to f-ing move" and to hurry up and put the money in a hat he had placed on the counter. Believing she saw a gun in his waistband, the employee gave Myers all the money in the cash register. Myers then walked out of the store. At the close of evidence, the trial court instructed the jury it could consider the evidence only for the limited purpose of proving intent, motive, or common design or plan, and only if the prosecution proved by a preponderance of evidence that Myers committed the prior offense.

The prosecution also sought to introduce oral testimony of the contents of a surveillance video without an audio component of the Inn's lobby on May 16, 2012. Los Angeles Sheriff's Department Detective Mark Donnel testified he and the Inn's owner viewed the surveillance video shortly after the robbery, but he and his partner accidentally deleted the video while trying to copy it off a digital video recorder. Detective Donnel and the Inn's owner sought to testify only as to what they viewed on the video, as the video contained no audio. Defense counsel objected to admission of testimony regarding the video's contents on the grounds that it constituted hearsay and improper secondary evidence. The trial court overruled the objections and allowed the testimony, finding the detectives inadvertently destroyed the video.

Detective Donnel testified that on the video, he saw someone wearing a red USC Trojans jacket ride a bicycle up to the Inn's front door, look through the door, then open it and walk up to the counter. The person appeared to talk to the clerk at the counter, then moved his jacket aside and reached for his waistband. The clerk put his hands up, took

3

money out of the cash register, and gave it to the individual in the red jacket, who then rode away on his bicycle.

The Inn's owner also testified to the surveillance video's contents. He testified he viewed the video three times before it was accidentally erased while he was assisting police to copy it. He testified he viewed a person enter the Inn, talk to the front desk clerk, then leave. The same man came back about five to ten minutes later, entered the Inn, and approached the counter. He put his hand in his right jacket pocket and made a gesture as if he had a gun. The clerk raised his left hand while taking money out of the cash register with his right hand, then handed the money to the man.

The jury found Myers guilty of second degree robbery. The trial court sentenced him to 19 years in state prison, consisting of 5 years for the robbery and an additional 14 based on the prior strike, felony, and prison terms. Myers timely appealed.

## Discussion

We review any ruling on the admissibility of evidence for abuse of discretion. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113.) A court abuses its discretion when its ruling "falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.)

### 1. Evidence of Myers's Prior Robbery

Myers argues the trial court abused its discretion in admitting evidence of his prior robbery of a donut shop to show a common design or plan because it lacked sufficient similarity to the robbery at issue. We disagree.

Under Evidence Code section 1101, evidence of other offenses or misconduct is inadmissible to prove criminal propensity, but may be admitted if relevant to prove a material fact such as motive, opportunity, intent, preparation, common design or plan, knowledge, identity, or absence of mistake or accident. (Evid. Code, § 1101, subds. (a) & (b); *People v. Kelly* (2007) 42 Cal.4th 763, 783.) "[E]vidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are manifestations of a common design or plan" to prove the defendant engaged in the conduct alleged by the

4

prosecution.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 399, 402.)  "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of spontaneous acts . . . ."  (*Id.* at p. 403.)

To be admissible, "such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.  [Citations.]' [Citation.]"  (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.)  Because evidence of prior offenses is highly prejudicial, it must have substantial probative value, and the trial court must carefully analyze the evidence under section 352 to determine if its probative value outweighs its inherent prejudicial effects.  (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.)  Under section 352, the trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)

Applying these principles, we find no abuse of discretion in the admission of evidence of the prior robbery.  In both the prior robbery and the charged offense, Myers entered a business and asked about price.  In the prior robbery, he grabbed his waistband in a manner indicating he had a gun, and told the donut shop employee to give him all the money and "not to f-ing move."  In the charged offense, Myers put his hand in his jacket pocket in a manner indicating he had a gun, told Hurst to give him the money in the cash register, and ordered Hurst not to look at him or he would shoot him.  The offenses were sufficiently similar to support an inference that Myers engaged in a common design or plan.  Evidence of a common design or plan is relevant to show Myers perpetrated the robbery of the Inn in the manner Hurst described, thereby providing credibility to Hurst's testimony.

Likewise, the trial court acted within its discretion under Evidence Code section 352 in finding the probative value of evidence of the prior robbery was not substantially outweighed by the potential for undue prejudice.  Because of the similarities and proximity in time between the May 13, 2012 donut shop robbery and the May 16, 2012 robbery, the evidence of the prior robbery had substantial probative value on the issue of

5

whether Myers perpetrated the charged offense according to a common design or plan. The unduly prejudicial impact of the evidence arises from its tendency to persuade jurors to infer Myers had a propensity to commit crime. But the risk of undue prejudice was reduced by the trial court's instruction to consider the evidence only for the limited purpose of determining whether defendant had a common design or plan, intent, or motive, and its admonishment not to infer from the evidence that Myers was disposed to commit crime. Weighing these factors, we conclude the probative value of the evidence of Myers's prior robbery outweighed its unduly prejudicial effect.

Because we find the prior robbery was admissible to show a common design or plan, we need not address whether it was also admissible to show intent or absence of mistake. Nevertheless, we will address Myers's argument that evidence of the donut shop robbery was irrelevant to prove intent or absence of mistake because they were not at issue in the case. He claims he contested only the issue of whether he used fear or force, to which the prior robbery was not probative. This argument has no merit.

When a prior offense is proffered to prove an ultimate fact, that fact must be in dispute. (*People v. Thompson* (1980) 27 Cal.3d 303, 315.) A defendant's plea of not guilty puts the elements of the crime in issue for purposes of Evidence Code section 1101, "unless the defendant has taken some action to narrow the prosecution's burden of proof." (*People v. Daniels* (1991) 52 Cal.3d 815, 857-858; *People v. Roldan* (2005) 35 Cal.4th 646, 705-706.) To prove Myers guilty of robbery, the prosecution was required to demonstrate Myers took personal property in the possession of another from his person or immediate presence, against his will, by means of force or fear, and with the specific intent permanently to deprive the person of such property. (*People v. Clark* (2011) 52 Cal.4th 856, 943; Pen. Code, § 211.)

Evidence of the prior robbery suggested Myers acted intentionally when he entered a business, asked about pricing, demanded money, gestured to indicate he had a gun, and took the contents of the cash register. (See *People v. Thomas* (2011) 52 Cal.4th 336, 355 [""""We have long recognized "that if a person acts similarly in similar situations, he probably harbors the same intent in each instance""""""].) That defense

6

counsel in closing argument focused solely on whether Myers used force or fear did nothing to narrow the elements at issue. (See *People v. Daniels*, *supra*, 52 Cal.3d at p. 857, citing *People v. Rodriguez* (1986) 42 Cal.3d 730, 757-758 [when a defendant fails to isolate the issue until after the prosecution has completed its case-in-chief, the court does not err in admitting evidence of prior criminal conduct to prove an element of the offense].) Accordingly, the trial court committed no error in admitting the evidence.

## 2. Oral Testimony of the Surveillance Video's Contents

Myers argues testimony regarding Hurst's act of putting up his hands constituted inadmissible hearsay evidence because the act was an out-of-court statement that he would comply with Myers's demands, offered to prove the statement's truth.[1] We need not resolve whether Hurst's act of raising his hands was hearsay because even if it was, it would have been admissible under Evidence Code sections 1240 and 1250. But for the sake of argument, we reach the issue and conclude the act was not hearsay.

Hearsay is a statement made other than by a witness at the hearing, offered to prove the truth of the matter stated. Hearsay is generally considered to be unreliable, and for that reason is inadmissible unless an exception applies. (Evid. Code, § 1200.) Assertive conduct may constitute a "statement" for hearsay purposes if it is intended to substitute for verbal expression. (Evid. Code, § 225; *People v. Cowan* (2010) 50 Cal.4th 401, 482.)

We recognize that the universal meaning of Hurst's act in human communication – as a sign of surrender – supports a conclusion that his use of that gesture was an

---

[1] Although Myers does not contend admission of testimony on the video's contents violated the secondary evidence rule, we will nevertheless address the issue. Oral testimony is inadmissible as secondary evidence to prove the content of a writing or video unless "the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." (Evid. Code, § 1523, subds. (a) & (b).) Here, both Detective Donnel and the Inn's owner testified detectives accidentally erased the videotape while attempting to copy it. From this testimony the trial court could reasonably conclude detectives accidentally deleted the videotape without fraudulent intent, and thus admission of testimony concerning its contents did not violate the secondary evidence rule.

intentional (if reflexive) communicative act. But it is equally indisputable that Officer Donnel's and the Inn's owner's account of the clerk raising his hands in the surveillance video was not offered to prove that Hurst actually surrendered to Myers. Thus, the testimony was not offered to prove the matter asserted – a surrender. The same would be true if Hurst had uttered the words "I surrender." Such proof of actual surrender – oral or gestural – would be of no relevance or materiality in the case at issue. What was at issue was that Myers used fear to effect the robbery. The clerk's raised hands reflected his state of mind of surrender and thus tended to support a contention that Myers used fear to effect his crime. So, we have no hearsay.

But even if the hearsay nature of the gestural statement were debatable, we would reach the same result. Evidence Code section 1240 provides that a statement is not made inadmissible by the hearsay rule if it purports to describe a condition perceived by the declarant, and was made spontaneously under the stress of excitement caused by that perception. Evidence Code section 1250 states, in relevant part: "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action . . . ." Section 1252 provides: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness." In this case, Hurst's raised hands, offered to show he was afraid of what he perceived as Myers threatening him with a gun, described both a condition perceived by Hurst, a spontaneous statement under section 1240, and his then existing state of mind under section 1250. Furthermore, there were no circumstances to indicate lack of trustworthiness because the clerk's gestural statement was a spontaneous reaction to having what he believed was a gun pointed at him. Accordingly, the evidence of the clerk's statement of mind – to wit, his raised hands – would always be admissible where the underlying assertive communication was trustworthy. Such is the case here.

8

**Disposition**

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


CHANEY, Acting P. J.


We concur:



JOHNSON, J.



MILLER, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.