Filed 9/17/15  P. v. Rodriguez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ALEX RODRIGUEZ,<br><br>　　　Defendant and Appellant. | A142369<br><br>(San Mateo County<br>Super. Ct. No. SC079378B) |

　　　William Alex Rodriguez appeals from a judgment upon a jury verdict finding him guilty of assault with force likely to produce great bodily injury.  (Pen. Code, § 245, subd. (a)(4).)  He contends that the judgment must be reversed because the trial court violated the secondary evidence rule in admitting the testimony of a witness who made observations of the incident on a live closed-circuit security monitor.  We affirm.

## I.  FACTS

　　　On May 18, 2013, at about 3:00 a.m., defendant and five of his friends entered a Denny's restaurant in San Mateo.  They were seated to the right of the register next to a table of four people who were also dining.  The people at both tables appeared intoxicated.  At one point, defendant got up to leave the restaurant, and Vicky Williams, the restaurant manager, heard him say "I'm leaving.  I'm not going to get into it over a female."  After defendant left, Williams went to her office to get change.  Her office has a monitor of the closed circuit surveillance camera of the restaurant's register area.  Williams looked at the monitor and saw that defendant reentered the restaurant and

1

walked straight to Deepak Kumar. Kumar was one of the men who had been seated at the table next to the one where defendant had been seated.

Williams ran from her office into the restaurant area and saw defendant hit Kumar. Kumar put his hands up in front of his face to try to stop the punch. At that point, the people at defendant's and Kumar's tables got up and proceeded to get defendant and Kumar to exit from the restaurant into the parking lot.

In the parking lot, Williams observed that the people from both groups were fighting and throwing punches. Kumar was on the ground and people, including defendant, were kicking and punching him. Williams also saw another man on the ground being kicked by people in defendant's group. They continued fighting until the police arrived.

Neersh Narayan testified that he and a group of three friends went to Denny's in the early morning hours of May 18, 2013. He was the designated driver for the evening and had only one drink. He went into Denny's with his friends, Kumar and Hendry Singh. They had been drinking. Nilesh Dabeesing, who was also with them, stayed in the truck because he was too intoxicated.

Narayan was at the register paying the bill when he heard a scuffling noise. He turned to see defendant on top of Kumar on the floor. Kumar, who was intoxicated, was trying to defend himself. Defendant and Kumar exchanged punches until Narayan approached to break up the fight by pulling defendant off Kumar. William Cartagena, one of defendant's friends, then struck Narayan in the head. Narayan and Kumar went outside and continued to fight with defendant and his friend. Dabeesing got out of the truck and was hit in the head and lost consciousness. Kumar required stitches to his lip.

Detective Stephen Bennett responded to the scene and interviewed Williams. She told him that she saw defendant hit Kumar on the video feed in her office and then ran into the restaurant area and observed it in person. Frank Taylor, a private investigator, interviewed Williams on January 12, 2014, several months after the incident. He testified that Williams told him she observed the fight on the closed circuit video monitor and then ran into the restaurant area.

2

## II. DISCUSSION

Appellant contends that the trial court's admission of Williams's testimony violated the best evidence rule because the videotape of the incident was not produced at trial.[1] We conclude that there was no violation of the secondary evidence rule because Williams's testimony was admissible primary evidence of the incident.

Prior to trial, defense counsel moved in limine to exclude Williams's testimony as inadmissible hearsay and as a violation of the secondary evidence rule because her testimony would be based on a videotape that had not been produced. The prosecutor opposed the motion, arguing that Williams observed the incident in "real time" and hence the secondary evidence rule did not apply. The prosecutor explained that the video recording was no longer in existence and that the People never received it. Defense counsel conceded that the People had not committed bad faith with regard to the video recording and that it no longer existed. The court denied the motion, stating that it would allow Williams "to testify to what she saw on the screen, which [was] transmitted as it was happening from a camera in the restaurant."

We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) The abuse of discretion standard gives considerable deference to a lower court's decision, particularly when factual determinations are involved. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 ["The trial court's . . . application of the law to the facts is reversible only if arbitrary and capricious"].)

"The law is settled . . . that when one testifies as to what he has seen or heard, his testimony is primary evidence regardless of whether or not the same matter is reduced to

---

[1] The best evidence rule was codified as former Evidence Code section 1500 et seq. "Effective January 1, 1999, the rule was renumbered and retitled, and is now called the secondary evidence rule." (*People v. Lucas* (2014) 60 Cal.4th 153, 264, fn. 42, disapproved on other grounds in *People v. Romero and Self* (Aug. 27, 2015, S055856) __ Cal.4th __ [2015 Cal.Lexis 5759]; see Evid. Code, § 1520 et seq.) For purposes of the secondary evidence rule, a videotape is a writing. (*People v. Panah* (2005) 35 Cal.4th 395, 475.)

writing or incorporated in a sound recording." (*People v. Johnson* (1974) 39 Cal.App.3d 749, 763.) Here, Williams testified that she saw defendant punch Kumar in the restaurant, rather than from the closed circuit video monitor. She testified as to what she saw in the restaurant, not to what the recording contained. Under these circumstances, the secondary evidence rule was not violated. (*People v. Swayze* (1963) 220 Cal.App.2d 476, 507–508 [witness's testimony about defendant's interrogation without reference to transcript of its tape recording did not violate best evidence rule]; see also *People v. Sweeney* (1960) 55 Cal.2d 27, 38 [sound recording was not the best evidence "[s]ince the officer was testifying to what he had seen and heard, his testimony [of conversation with the defendant] was 'primary evidence' "].)

Even if Williams's testimony was secondary evidence, the testimony was admissible because the videotape was unavailable through no fault of the People.[2] Under Evidence Code section 1523, subdivision (b), the evidence was admissible because the prosecution did "not have possession or control of a copy of the [videotape] and the original [was] . . . destroyed without fraudulent intent on the part of the [prosecution]." Defense counsel conceded that it had no basis to assert that the prosecution exercised bad faith in not obtaining the videotape. On these facts, courts have permitted the admission of secondary evidence, including testimony of a recording's contents. (See *People v. Myers* (2014) 227 Cal.App.4th 1219, 1226, fn. 1 [testimony on the video's contents did not violate the secondary evidence rule where detectives accidentally erased the videotape while attempting to copy it]; *People v. Hovarter* (2008) 44 Cal.4th 983, 1012–1014 [copies of original documents admissible where witness testified the original documents were destroyed in the normal course of business].)

In any event, even if the court erred in allowing Williams to testify about what she observed on the video monitor, she also testified that she observed the continuation of the fight both in the restaurant and in the parking lot and saw Kumar being punched and kicked. Kumar also testified that he was punched and required stitches to his lip, and

---

[2] The prosecutor claimed that the restaurant only kept the videotapes for a certain period of time and that it was no longer in existence.

4

Narayan saw defendant on top of Kumar.  Finally, Taylor and Detective Bennett also testified that Williams reported at the scene that she saw defendant hit Kumar.  There was thus overwhelming evidence of defendant's guilt.  Any discrepancies in Williams's testimony were for the jury to resolve.  (*People v. Friend* (2009) 47 Cal.4th 1, 41.)  On these facts, any error in admitting Williams's testimony was harmless.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

### III.  DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.