Filed 7/25/22 P. v. Neal CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C091309 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CF02781) |
| v. | |
| DAVID LEE NEAL, | ON TRANSFER |
| Defendant and Appellant. | |

A jury found defendant David Lee Neal guilty of attempted second degree robbery, assault with a firearm, and possession of a firearm by a felon, in relation to an attempted robbery at a mini mart in Oroville, California. The trial court sentenced defendant to an indeterminate term of life with a minimum term of 25 years, plus six years in state prison under the three strikes law.

On appeal, defendant argued that the trial court erred in (1) admitting evidence of a prior uncharged robbery and attempted robbery of convenience stores to prove identity and common design or plan, (2) admitting testimony by defendant's parole officer that defendant was the person shown in a surveillance video, and (3) summarily denying

1

defendant's request for mental health diversion under Penal Code section 1001.36.[1]  This court rejected the first two claims on the merits but conditionally reversed the judgment and directed the trial court to consider defendant's eligibility for diversion under section 1001.36.

Defendant filed a petition for review asserting, among other things, that he was entitled to resentencing under the newly-enacted Senate Bill No. 567 (2021-2022 Reg. Sess.).  The California Supreme Court granted review and transferred the matter to us with directions to vacate this court's decision and reconsider the cause in light of the new legislation.

Having vacated our prior opinion and considered the parties' supplemental briefs, we conclude (1) the trial court did not abuse its discretion in admitting the uncharged crimes evidence, (2) the testimony of defendant's parole officer was properly admitted, (3) we will conditionally reverse the judgment and direct the trial court to consider defendant's eligibility for diversion under section 1001.36, and (4) if the trial court determines that defendant does not meet the criteria under section 1001.36 or if defendant does not successfully complete diversion, the trial court shall resentence the defendant on count 3 under section 1170, as amended by Senate Bill No. 567, and reinstate the remainder of the sentence.

## BACKGROUND

R.R. was working behind the counter at a mini mart in Oroville, California on April 13, 2019, when a man wearing sunglasses, a baseball cap and a hooded camouflage sweatshirt, with the hood pulled up over the baseball cap, came into the store.  The man got a can of pineapple juice from the cooler and stood in line behind a customer.  The man walked up to R.R. after the customer left and asked for cigarettes.  When R.R. rang

---

[1] Undesignated statutory references are to the Penal Code.

up the items and turned to get the cigarettes, the man pulled out a black or brown handgun, pointed it at R.R.'s face, and demanded money. R.R. was about to comply when he heard the gun click. He put his hand up and moved away from the man. The man hit R.R. on the side of his head with the gun. The two struggled and the man eventually ran out of the store. No money was taken.

R.R. saw the man go to a black or brown car parked on the street. The man got in the backseat, behind the driver, and the car drove away. The time stamp on store surveillance videos showed that the suspect entered the store at 8:26:24 a.m. and left the store at 8:27:53 a.m.

Kristen B. saw two men scuffling at the door of the mini mart as her car was stopped on the street. One of the men ran to a black Volkswagen Jetta with faded paint and got into the backseat on the driver's side. Kristen identified a black Jetta previously registered to defendant as the type of car she saw the man enter.

A fingerprint obtained from the pineapple juice can left at the mini mart did not match defendant or R.R. DNA analysis in relation to the can was inconclusive.

The prosecutor played surveillance videos from the mini mart at the trial. Oroville Police Department Sergeant John Sanzone, who investigated the attempted robbery, testified, based on the surveillance videos, that the suspect wore a hooded, Realtree-brand camouflage sweatshirt. The suspect had tattoos on his neck and on the knuckles of his right and left hand.

As part of his investigation, Sergeant Sanzone received a report about a man who tried to cash a check at a casino four days before the mini mart attempted robbery. That man was defendant. Surveillance videos from the casino showed defendant wearing the same camouflage sweatshirt as the suspect from the mini mart attempted robbery. The man in the casino videos left the casino in a black Volkswagen Jetta with the license plate No. 4UIJ349. It was determined through investigation that the Jetta was registered to defendant. The paint on the roof and hood of the car was faded. Sergeant Sanzone

3

testified that the man in the casino surveillance videos had the same tattoos as the suspect in the mini mart surveillance videos.

R.R. testified that defendant looked like the person in the mini mart surveillance videos. Defendant's parole officer Robert Stevenson identified defendant as the person shown in a still photograph of the suspect in the mini mart attempted robbery.

Sutter County Sheriff's Department Deputy Charles Green and Marysville Police Department Officer Gregory Parks testified about prior crimes committed by defendant. Deputy Green testified that defendant confessed to committing a robbery at a Sutter Food and Gas Market in Sutter County and an attempted robbery at a Quick Stop in Marysville on May 23, 2011. Defendant committed those crimes by himself. He went into the stores, grabbed an item like gum, walked up to the counter, got the clerks to open the cash drawer, and pointed a handgun in their faces.

Officer Parks investigated the attempted robbery at the Quick Stop in Marysville. He viewed surveillance video taken at the Quick Stop and saw the following: a man walking around the store before approaching and speaking to the clerk; the clerk turning to grab cigarettes behind him; and the suspect producing a handgun as the clerk turned around. There was a scuffle between the suspect and the clerk. The suspect manipulated the handgun with his left hand, expending an unspent round onto the counter, and ultimately ran out of the store. Officer Parks identified defendant as the Quick Stop suspect from his review of store surveillance video.

Defendant testified at trial. He admitted that he committed and was convicted of attempted robbery and robbery for the 2011 crimes. Defendant also admitted he was the person shown in the casino surveillance videos. But he denied that he was the person in the surveillance videos from the mini mart. He said he was at his cousin's house the morning of April 13, 2019.

The jury convicted defendant of attempted second degree robbery (§§ 211, 664, subd. (a) -- count 1), assault with a firearm (§ 245, subd. (a)(2) -- count 2), and

4

possession of a firearm by a felon (§ 29800, subd. (a)(1) -- count 3). Upon defendant's request for a bifurcated proceeding and waiver of a jury trial on the enhancement allegations, the trial court found true the allegations that defendant personally used a firearm within the meaning of sections 12022.53, subdivision (b) and 12022.5, subdivision (a). The trial court also found true the allegations that defendant had prior convictions for robbery and attempted robbery, which were serious felonies and strike offenses, and served a prior prison term. The trial court denied defendant's motion to dismiss the prior strike convictions pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. It imposed an indeterminate term of life with a minimum term of 25 years on the count 1 conviction, plus six years in prison for the count 3 conviction. It imposed but stayed sentence on the count 2 conviction pursuant to section 654. It exercised its discretion to dismiss the firearm use enhancements pursuant to section 1385 and dismissed the prior prison term enhancement pursuant to Proposition 136.

DISCUSSION

I

Defendant contends the trial court erred in admitting evidence that he previously committed a robbery and attempted robbery at convenience stores to prove identity and common design or plan.

A

The People moved in limine to introduce evidence that, among other things, defendant committed an armed robbery in Sutter County and an attempted robbery in Marysville on May 23, 2011. The evidence was offered under Evidence Code section 1101, subdivision (b) to show intent, knowledge and identity. The People argued the prior crimes shared facts in common with the mini mart attempted robbery in that in each case, defendant entered the store without a mask, placed a small item on the counter and, when the clerk rang up the purchase, produced a handgun and demanded money.

5

Defendant's trial counsel opposed the motion, arguing the jury could decide from the surveillance videos whether defendant committed the mini mart attempted robbery, and the uncharged crimes evidence was unduly prejudicial because the jury would likely convict defendant based on his past conduct rather than evidence of the charged offenses.

The trial court held an Evidence Code section 402 hearing at which Deputy Green and Officer Parks testified. Defendant confessed to Deputy Green that he stole a handgun from a friend and used that handgun to attempt to rob a Quick Stop in Marysville and to rob a Sutter Food and Gas Market in Sutter County on May 23, 2011. Defendant committed the 2011 crimes alone but there were other occupants in the vehicle with him. He did not cover his face during the robberies. As for the Quick Stop attempted robbery, he pretended to buy gum so that the clerk would open the cash drawer and then pointed a gun at the clerk's face and demanded money. Officer Parks identified defendant as the person shown in a still photograph from the Quick Stop surveillance video.

Citing *People v. Roldan* (2005) 35 Cal.4th 646 (*Roldan*), disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22, the trial court ruled that evidence of the 2011 crimes shared sufficient and distinctive marks with the charged offenses and was relevant on the issues of identity and common design and plan. With respect to the Sutter County robbery, the trial court said defendant did not wear a mask, used a black handgun, pointed the gun at the clerk's face, and robbed a food mart, a similar target to the mini mart. With regard to the Quick Stop attempted robbery, the trial court said defendant wore a hoodie and attempted to rob a similar target as the mini mart. The trial court concluded that the probative value of the 2011 crimes substantially outweighed the risk of prejudicial effect.

B

Evidence of a defendant's character or character trait is generally inadmissible to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a): *People*

6

*v. Leon* (2015) 61 Cal.4th 569, 597 (*Leon*).) However, evidence that the defendant committed a crime, civil wrong or other act, other than the charged offense (hereafter uncharged act), may be admitted when relevant to prove a material fact at issue in the case -- such as identity or a common plan or design -- and not to prove the defendant's predisposition to commit the act. (Evid. Code, § 1101, subd. (b); *People v. Fayed* (2020) 9 Cal.5th 147, 191.) The admissibility of uncharged act evidence depends on whether the uncharged act is relevant to prove a fact at issue and whether its admission would be unduly prejudicial, confusing or time-consuming. (*People v. Sanchez* (2016) 63 Cal.4th 411, 452; *Leon,* at pp. 597-598.)

Uncharged act evidence is relevant when it is sufficiently similar to the charged crime to support a rational inference of identity, common design or other material fact. (*Leon, supra*, 61 Cal.4th at p. 598; *People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402 (*Ewoldt*), superseded by statute as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 991.) To be admissible to prove a common design or plan, there must be " 'a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' " (*Ewoldt,* at p. 402.) "[T]he common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Id.* at p. 403.) It need only support the inference that the defendant used that plan in committing the charged offense. (*Ibid.*)

A greater degree "of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " (*Ewoldt, supra*, 7 Cal.4th at p. 403.) But the "common features need not be unique or nearly unique; 'features of substantial but lesser distinctiveness may yield a

7

distinctive combination when considered together.' " (*Leon, supra*, 61 Cal.4th at p. 598.) We review the trial court's admission of evidence under Evidence Code section 1101, subdivision (b) for abuse of discretion. (*People v. Thompson* (2016) 1 Cal.5th 1043, 1114.)

In *Roldan, supra*, 35 Cal.4th 646, evidence that the defendant previously participated in a swap meet robbery had a tendency to prove the identity of the persons who committed a subsequent swap meet robbery. (*Id.* at p. 706) The California Supreme Court concluded that the targets of both robberies were unusual venues for a robbery and the charged and uncharged acts were committed in a distinctive manner. (*Ibid.*) "One robber grabbed the cash, not merchandise, while a second stood behind him with an Uzi or machine gun partially obscured by clothing. The third member of the group waited in a car to facilitate a rapid departure." (*Ibid.*)

A lesser degree of similarity is required for evidence of uncharged acts to be relevant to prove a common design or plan. (*Ewoldt, supra*, 7 Cal.4th at pp. 402-403.) In *People v. Myers* (2014) 227 Cal.App.4th 1219 (*Myers*), evidence that the defendant committed a prior robbery of a donut shop was admissible to show a common design or plan in a case where he was charged with the robbery of a motel. (*Id.* at pp. 1224-1226.) In both robberies, the defendant entered the business, asked about price, gestured as if he had a gun in his waistband or jacket, and demanded money from the cash register. (*Ibid.*) The appellate court found that the offenses were sufficiently similar to support an inference that the defendant engaged in a common design or plan. (*Id.* at p. 1225.)

Here, the trial court did not abuse its discretion in ruling that the 2011 crimes were sufficiently similar to the mini mart attempted robbery to support a rational inference that defendant employed the same design or plan in committing the offenses. As the trial court found, defendant targeted similar businesses in the charged and uncharged crimes. Defendant used a handgun in the robberies. Acting alone, he entered the stores without a mask and pretended to purchase a small item. He pointed a gun at the clerk's faces when

the clerks opened the cash drawers. As in the Quick Stop attempted robbery, defendant walked around the mini mart, approached and spoke with the clerk, produced a gun when the clerk turned to get cigarettes, assaulted the clerk, and ran away.

In addition, the probative value of the uncharged act evidence must not be substantially outweighed by the probability that it will necessitate undue consumption of time or create a substantial danger of undue prejudice, confusion of the issues, or misleading of the jury. (*People v. Kipp* (1998) 18 Cal.4th 349, 371; *People v. Walker* (2006) 139 Cal.App.4th 782, 796; Evid. Code, § 352.) We review a ruling made under Evidence Code section 352 for abuse of discretion. (*People v. Foster* (2010) 50 Cal.4th 1301, 1328 (*Foster*).)

Considering the common features noted above, evidence of the uncharged crimes had a substantial tendency to demonstrate that defendant committed the mini mart robbery according to a design or plan in common with the 2011 crimes. In addition, evidence of the 2011 crimes and the mini mart attempted robbery came from independent sources, enhancing the probative value of the uncharged act evidence. (*Ewoldt, supra*, 7 Cal.4th at pp. 404-405.) Further, the risk of prejudice was decreased because defendant had been convicted of the 2011 crimes. (*People v. Balcom* (1994) 7 Cal.4th 414, 427 (*Balcom*).) The testimony about the uncharged crimes by Deputy Green and Sergeant Parks did not consume significant time. (*Leon, supra*, 61 Cal.4th at p. 599.) Moreover, the circumstances of the 2011 crimes were no more inflammatory than those of the charged offenses. (*Ewoldt,* at p. 405.) Finally, the trial court instructed the jury pursuant to CALCRIM No. 375 on the limited use of the uncharged act evidence, minimizing the potential for improper use and making juror confusion unlikely. (*Leon,* at pp. 599-600, *Foster, supra*, 50 Cal.4th at p. 1332.) Considering all of the relevant factors, the trial court did not abuse its discretion in admitting evidence of the uncharged 2011 crimes.

Defendant nevertheless argues the trial court erred in admitting the uncharged act evidence to show a common plan because the fact that an attempted robbery occurred at

9

the mini mart was never in dispute. But "[a] defendant's plea of not guilty puts the elements of the crime in issue for purposes of Evidence Code section 1101, 'unless the defendant has taken some action to narrow the prosecution's burden of proof.' " (*Myers, supra*, 227 Cal.App.4th at p. 1225; see *Balcom, supra*, 7 Cal.4th at pp. 422-423.) Although the closing argument by defendant's trial counsel focused on the issue of identity, there was no concession or agreement that an attempted robbery had been committed at the mini mart on April 13, 2019.

Nevertheless, even if it was error to admit evidence of the 2011 crimes, it was not reasonably probable that defendant would have obtained a more favorable result absent the error. (*People v. Williams* (2017) 7 Cal.App.5th 644, 678; *People v. Felix* (1993) 14 Cal.App.4th 997, 1007-1008 [applying *People v. Watson* (1956) 46 Cal.2d 818 test].) R.R. testified that defendant looked like the person in the mini mart surveillance videos. Kristen B.'s description of the getaway car matched defendant's car. Officer Stevenson, who had about 13 prior contacts with defendant, identified defendant as the suspect in the still photograph from the mini mart surveillance videos. Defendant admitted he was the person in the casino videos. The casino videos showed that days before the mini mart attempted robbery, defendant wore the same distinctive camouflage sweatshirt worn by the perpetrator of the mini mart attempted robbery. Sergeant Sanzone testified that defendant had the same tattoos as the suspect shown in the mini mart surveillance videos. The prosecutor played the mini mart and casino videos at the trial, and the jury could compare defendant to the persons depicted in those videos. Although defendant denied he was the person shown in the mini mart surveillance videos, his credibility was impeached. He denied that he had facial hair when he visited the casino days before the mini mart attempted robbery, but the casino's surveillance video showed otherwise. Defendant could not explain why the perpetrator of the mini mart attempted robbery wore a similar camouflage sweatshirt as defendant when he visited the casino days before the charged crimes. And as we have explained, the trial court instructed the jury on the

10

limited use of the uncharged act evidence. It instructed that the jury could not conclude from evidence of the prior crimes that defendant had a bad character or was disposed to commit crime. It told the jury that the uncharged act evidence was not sufficient by itself to prove that defendant was guilty of the charged offenses. We presume the jury understood and followed the trial court's instructions. (*People v. Davidson* (2013) 221 Cal.App.4th 966, 973.) Defendant fails to show a violation of his federal constitutional rights, requiring the application of the *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] harmless error test. (*Foster, supra*, 50 Cal.4th at p. 1335.)

Because the uncharged act evidence was admissible to prove a common design or plan, we need not decide whether it was error for the trial court to also admit the evidence for the purpose of proving identity. (*Foster, supra*, 50 Cal.4th at p. 1329, *Myers, supra*, 227 Cal.App.4th at p. 1225.) Nevertheless, defendant claims the CALCRIM No. 375 instruction [evidence of uncharged offenses to prove identity, intent, common plan, etc.] invited the jury to rely on a lower level of commonality to make a finding on identity. But as explained, compelling evidence established that defendant committed the mini mart attempted robbery. It is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the reference in the CALCRIM No. 375 instruction to identity. (*Foster,* at pp. 1332-1333.)

II

Defendant next argues the trial court erred in permitting Officer Stevenson to offer his opinion that defendant was the person shown in a surveillance video. Defendant claims the opinion went to the ultimate fact in the case and invaded the purview of the jury.

A

Defendant moved in limine to exclude testimony by Sergeant Sanzone, Officer Stevenson, and defendant's mother that the person depicted in a photograph or video was

defendant. Defendant argued the jury could determine whether defendant was the person in a surveillance video without lay testimony identifying defendant.

The trial court ruled that Officer Stevenson could give his opinion that a person depicted in a photograph or video was defendant because the officer was familiar with defendant at the time of the charged offenses. The trial court acknowledged that defendant's appearance at the time of trial was somewhat different than at the time of the charged crimes. The judge who presided over the trial also presided over the preliminary hearing, and at the preliminary hearing, Officer Stevenson had testified that defendant's appearance at the time of the mini mart attempted robbery was different from his appearance at the preliminary hearing. In particular, the hair on defendant's face and head had changed. Sergeant Sanzone testified at the trial that defendant had added teardrop tattoos to the left side of his face after the charged crimes. The trial court found under Evidence Code section 352 that the probative value of the lay opinion testimony outweighed the prejudicial effect. It also ruled that defendant's mother could testify about the identity of the person shown in the surveillance videos.

Officer Stevenson testified at trial that on April 13, 2019, he received a photograph of a suspect in a robbery that occurred in Oroville and identified the person in the photograph as defendant. Defendant's mother testified that the person shown in a still photograph from the mini mart surveillance video was not defendant.

B

"A lay witness may offer opinion testimony if it is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony. [Citation.] '[T]he identity of a person is a proper subject of nonexpert opinion . . . .' " (*Leon, supra*, 61 Cal.4th at p. 601; see *People v. Mixon* (1982) 129 Cal.App.3d 118, 127 (*Mixon*); *People v. Perry* (1976) 60 Cal.App.3d 608, 612 (*Perry*).) We review rulings on the admission of lay opinion testimony for abuse of discretion. (*Leon,* at p. 600*.*)

12

In *Leon*, a detective who was very familiar with the defendant's appearance from contacts following the defendant's arrest was allowed to testify that the person shown in a surveillance video was the defendant. (*Leon, supra*, 61 Cal.4th at pp. 600-601.) The California Supreme Court held that the trial court did not abuse its discretion in admitting the lay opinion testimony because it was based on the detective's personal knowledge and the detective's testimony aided the jury. (*Id.* at p. 601.) The Supreme Court noted that the detective was familiar with the defendant's appearance around the time of the crimes, defendant had changed his appearance after the crimes, and because the surveillance video was played for the jury the jurors could make up their own minds whether the person shown was the defendant. (*Ibid.*)

Defendant does not dispute that Officer Stevenson had the requisite personal knowledge of defendant's appearance at the time of the charged crimes but contends it was not established how Officer Stevenson's lay opinion testimony could assist the jury. We disagree. Although the person shown in the mini mart surveillance videos wore a distinctive camouflage hooded sweatshirt, he also had a baseball cap on his head, the hood of his sweatshirt was pulled over his baseball cap, and he wore sunglasses. R.R. did not recognize the suspect, who was in the store less than two minutes. Defendant changed his appearance after the charged crimes. Officer Stevenson's testimony was properly admitted under these circumstances. (*Leon, supra*, 61 Cal.4th at pp. 600-601; *Mixon, supra*, 129 Cal.App.3d at pp. 129-132; *Perry, supra*, 60 Cal.App.3d. at p. 613.) Officer Stevenson's lay opinion testimony did not invade the province of the trier of fact, as defendant contends. (*Perry,* at pp. 614-615.) Rather, it was admitted to aid the jury. (*Ibid.*)

III

Defendant further contends the trial court erred in summarily denying his request, made after the verdicts but before sentencing, for mental health diversion under section 1001.36. The Attorney General agrees the case should be remanded so the trial court can

13

conduct a mental health diversion eligibility hearing under *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*).

The jury returned its verdicts on October 28, 2019. Defendant filed a motion for mental health diversion pursuant to section 1001.36 on December 12, 2019, prior to sentencing. The trial court noted section 1001.36 referred to pretrial diversion and "pretrial" was defined as prior to adjudication. Defense counsel argued "adjudication" referred to sentencing. But the trial court summarily denied the motion, stating there had been a conviction following a jury trial.

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment. . . .' " (*Frahs, supra*, 9 Cal.5th at p. 626.) A trial court may grant pretrial diversion if (1) it is satisfied that the defendant has a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder; (2) it is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense; (3) in the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment; (4) the defendant consents to diversion and waives his or her right to a speedy trial, unless he or she cannot consent or provide a waiver because of a finding of mental incompetency; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety. (§ 1001.36, subd. (b)(1).) Certain crimes, none of which are applicable here, are excluded from section 1001.36. (§ 1001.36, subd. (b)(2).)

The trial court may require the defendant to make a prima facie showing that he or she will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion at any stage of the proceedings. (§ 1001.36, subd. (b)(3).) "The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3).) The maximum period of diversion is two years. (§ 1001.36, subd. (c)(3).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion" and "the arrest upon which the diversion was based shall be deemed never to have occurred." (§ 1001.36, subd. (e).)

A defendant may request diversion until sentencing and entry of judgment. (*People v. Curry* (2021) 62 Cal.App.5th 314, 321-325, review granted July 14, 2021, S267394; but see *People v. Braden* (2021) 63 Cal.App.5th 330, 333-334, review granted July 14, 2021, S268925.) A conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing under section 1001.36 is warranted when the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion, i.e., that the defendant had a qualifying mental disorder. (*Frahs, supra*, 9 Cal.5th at p. 640.)

The record indicates that in 2010, defendant was diagnosed with bipolar disorder, a qualifying mental disorder; that he was prescribed Valium; and that he participated in counseling. (§ 1001.36, subd. (b)(1).) Based on this record and the Attorney General's agreement that a limited remanded is appropriate under *Frahs*, we will conditionally reverse the judgment and direct the trial court to consider defendant's eligibility for diversion under section 1001.36.

## IV

In supplemental briefing, defendant contends Senate Bill No. 567, which amended section 1170, retroactively applies to his case and requires that he be resentenced on the count 3 conviction for possession of a firearm by a felon (§ 29800, subd. (a)(1)).

Effective January 1, 2022, Senate Bill No. 567 changed a trial court's sentencing discretion under section 1170. Among other things, under the amended statute, when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the trial court must impose a term not exceeding the middle term unless there are circumstances in aggravation of the crime that justify the imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances (1) have been stipulated to by the defendant, (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial, or (3) relate to the defendant's prior convictions and are based on a certified record of conviction. (§ 1170, subds. (b)(1), (b)(2), (b)(3); Stats. 2021, ch. 731, Legis. Counsel's Digest.)

The Attorney General agrees, and we do too, that the change in the law is ameliorative and applies retroactively to defendant's case. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

The trial court imposed an upper term sentence on count 3. It considered the following facts in aggravation in selecting the upper term: (1) that the manner in which the crime was committed indicated planning and sophistication, (2) that defendant's prior convictions were numerous, and (3) that defendant was on parole at the time of the offense. In mitigation, the trial court noted that defendant did not have any prior probation or parole violation. The trial court found that the circumstances in aggravation outweighed the circumstances in mitigation. The parties agree defendant did not stipulate to the facts underlying the circumstances in aggravation recited by the trial court and that the facts were not found true beyond a reasonable doubt by the jury. In addition, the record does not show that they were based on a certified record of conviction. The

16

Attorney General agrees the trial court should resentence defendant consistent with amended section 1170 if resentencing becomes appropriate, i.e., if the trial court finds defendant ineligible for mental health diversion or if defendant fails to successfully complete it. We agree.

## DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court for an eligibility determination under section 1001.36. The trial court may grant diversion if it finds that defendant meets the statutory criteria. If defendant successfully completes diversion, the trial court shall dismiss the charges. However, if the trial court determines that defendant does not meet the criteria under section 1001.36 or if defendant does not successfully complete diversion, the trial court shall resentence defendant on count 3 under section 1170, as amended by Senate Bill No. 567, and reinstate the remainder of the sentence.

                                           /S/
                                      MAURO, J.

We concur:

/S/
HULL, Acting P. J.

/S/
HOCH, J.