Filed 6/3/24  P. v. Thomas CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>KESHAWN THOMAS,<br><br>  Defendant and Appellant. | F086297<br><br>(Super. Ct. No. F15907476)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffery A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Penal Code section 1385 encourages the dismissal of enhancements when certain "mitigating circumstances" are shown to exist.  (*Id*., subd. (c)(2); all undesignated

statutory references are to the Penal Code.)  One such circumstance is where imposing an enhancement "could result in a sentence of over 20 years."  (*Id*., subd. (c)(2)(C).)  Another is where the underlying offense "is connected to prior victimization or childhood trauma."  (*Id*., subd. (c)(2)(E).)  Sentencing courts must "consider and afford great weight" to the specified circumstances, meaning "the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (*Id*., subd. (c)(2).)

Keshawn Thomas (defendant) claims the trial court erred by refusing to dismiss a firearm enhancement that caused his prison sentence for attempted murder to exceed 20 years.  He disputes the trial court's finding of danger to public safety, and he further alleges the court overlooked evidence of "childhood trauma."  In the alternative, defendant seeks reversal based on his alleged absence during the pronouncement of judgment due to "technical issues" with his remote appearance by phone.

There is insufficient evidence to support defendant's claim of absence from his sentencing hearing.  Nor does the record show the mitigating circumstance of "childhood trauma" as defined by section 1385, subdivision (c).  The dispositive issue is whether the trial court abused its discretion by declining to strike the firearm enhancement for public safety reasons.  We conclude the trial court acted within its discretion.  The judgment must therefore be affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is defendant's third appeal since being convicted of multiple felonies in 2016.  His unopposed request for judicial notice of the appellate record in *People v. Thomas*, F073552 (*Thomas I*), is hereby granted.  We refer to the second appeal, *People v. Thomas*, F078649, as *Thomas II*.

2.

*The Underlying Offenses*

In the early hours of September 27, 2014, victim M.D. agreed to pay a prostitute $100 for a 30-minute encounter. The prostitute took M.D.'s money and eventually departed from the rendezvous in a Mercedes sedan occupied by defendant and additional passengers. As more fully explained in the *Thomas I* opinion, M.D. felt the prostitute had not earned the $100 and wanted to get his money back. He pursued the Mercedes in his truck, and both vehicles eventually pulled into a parking lot.

Defendant exited the Mercedes and approached the victim's truck. The victim remained seated in his vehicle, and defendant attempted to rob him at gunpoint. When the victim tried to drive away, defendant shot him. The victim survived but required surgery to remove a .25-caliber bullet from his heart.

*Thomas I*

In March 2016, a jury convicted defendant of attempted murder (§§ 187, 664; count 1), assault with a semiautomatic firearm (§ 245, subd. (b); count 2), and attempted robbery (§§ 211, 664; count 3). Firearm enhancement allegations under section 12022.53, subdivision (d) were found true in relation to counts 1 and 3. A firearm enhancement allegation under section 12022.5, subdivision (a) was found true in relation to count 2.

In April 2016, defendant was sentenced to an aggregate prison term of 30 years to life based on the lower term for attempted murder without premeditation (§ 664, subd. (a) [five years]) plus the enhancement of 25 years to life under section 12022.53, subdivision (d). Punishment for count 2 was stayed (§ 654) and a concurrent prison term was imposed for count 3. During sentencing, the trial court noted its lack of discretion regarding the imposition of a life term under California's "Use a gun and you're done" law, i.e., section 12022.53.

Defendant filed an appeal, which was pending when Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620) took effect in January 2018. The legislation amended

3.

sections 12022.5 and 12022.53 to allow trial courts, "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss [a firearm] enhancement otherwise required to be imposed …." (§§ 12022.5, subd. (c), 12022.53, subd. (h).) In *Thomas I*, this court affirmed defendant's convictions but concluded Senate Bill 620 applied retroactively to his case. The cause was remanded to allow the trial court to consider exercising its discretion under sections 12022.53, subdivision (h), and 1385.

**Thomas II**

In January 2019, the trial court declined to alter the original sentence. The following explanation was provided:

> "… If I had the discretion to sentence [defendant] to a 12022.53(c) enhancement on Count 1, I would consider granting the request … and sentence him to up to 29 years determinate. Neither the statute nor any reported case I have found, nor [the opinion in *Thomas I*] tells me that I have that discretion. And if I were limited in my available sentence by striking the 12022.53(d) enhancement to Count 1 to impose 19 years determinate as the maximum sentence, I would find that that is an inappropriate exercise of discretion….

> "So for what it's worth, the Court declines to exercise its discretion under 1385 with the understanding that it cannot replace the enhancement with a lesser enhancement not found by the jury even though the facts found by the jury, per their verdict[,] support that lesser enhancement. And if the Court of Appeal[] feels that I can, in fact, impose that lesser enhancement, this case should be remanded to me to exercise that discretion, but I decline to exercise discretion under my understanding of this code section, and what little case law there is that interprets it to this point. The Court [of Appeal] says I could strike the enhancement and impose a different sentence. It says nothing about modifying the enhancement, imposing a lesser enhancement, and I decline to strike the enhancement if my only discretion is to drop to a sentence of 13, 16, or 19 years determinate."

Defendant filed another appeal, claiming the trial court misunderstood the scope of its discretion. While the *Thomas II* appeal was pending, the California Supreme Court decided *People v. Tirado* (2022) 12 Cal.5th 688. The *Tirado* opinion holds that when a sentencing court "determines that the section 12022.53(d) enhancement should be struck

or dismissed under section 12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c)." (*Id.* at p. 700.) Based on this holding, the People conceded the merits of defendant's claim. This court accepted the concession and remanded the cause for a new sentencing hearing.

### *The Present Appeal*

By the time *Thomas II* was decided, the trial judge had retired. The case was assigned to a different judge for the proceedings on remand. In April 2023, the defense filed a sentencing memorandum requesting defendant "be sentenced to 19 years." The calculation for a 19-year determinate term was not explained. Defendant's arguments for relief under section 1385, subdivision (c) are detailed elsewhere in the opinion.

A resentencing hearing was conducted on April 12, 2023. The prosecutor did not argue for a specific punishment, but he did note the following with regard to the prior sentencing:

> "Understanding that this Court does have the discretion, if it were so inclined, to reduce the 25 to life down to a lesser firearm enhancement, I think Judge Hamlin, who, did, again, hear the evidence in the trial, felt that the 29-year determinate term would be, to him, the only acceptable resentencing.
>
> "Judge [Hamlin] did make a statement that 19 years, a 19-year sentence would not—would be not inappropriate exercise of discretion. [*Sic*.] It would not be [an] appropriate exercise of discretion.
>
> "Unfortunately, I think 29 years would require—to get to 29 years, the Court could give 20 years on the gun and an aggravated term of 9 years on the attempted murder. That would require, that is, the aggravated term that would require [defendant], I believe to stipulate to aggravating circumstances for the Court to get to an aggravated term so I think if [defendant] were asking the Court to come off of the 25 to life on the firearm enhancement he should be willing and must be willing to stipulate to aggravating factors and I would submit it on that."

The defense, having previously requested a 19-year term in its sentencing memorandum, asked the court to also consider, in the alternative, a 27-year term. We

assume defense counsel was impliedly proposing the middle term of seven years for attempted murder without premeditation (§ 664, subd. (a)) and a consecutive 20-year determinate term under section 12022.53, subdivision (c).

The trial court ruled as follows:

> "Well, I was not the judge that did the trial so I'm going off of what is in the court file. I will note that this is a case where it's just a hair shy of miraculous that this was not a homicide. The bullet that was fired collapsed a lung and was lodged in the victim's heart, so it's extraordinarily serious as far as what happened when the gun was used.

> "And I am aware that the Court does have discretion to substitute either a 12022.53(b) or subdivision (c) enhancement in place of the subdivision [(d)] enhancement that was found true by the jury, but the Court finds that dismissing or reducing the firearm enhancement would be a danger to public safety given the egregious nature and violent nature of the defendant's conduct and I am finding a dismissal [or] the reduction of the enhancement would result in physical injury or other serious danger to others."

## DISCUSSION

### I. Defendant's Due Process Claim Is Unsubstantiated

"[A] criminal defendant has a constitutional and statutory right to be present at sentencing." (*People v. Fedalizo* (2016) 246 Cal.App.4th 98, 110.) Under state law, if the defendant "is currently incarcerated in the state prison," a sentencing hearing may be conducted "by two-way electronic audio[/]video communication between the defendant and the courtroom in lieu of the physical presence of the defendant in the courtroom." (§ 977.2, subd. (a).) The constitutional right to be present, which may be waived, is guaranteed as a matter of due process to the extent "'''"(1) the proceeding is critical to the outcome of the case, and (2) the defendant's presence would contribute to the fairness of the proceeding."'''" (*People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 23.)

In defendant's opening brief, it is alleged he was absent from the resentencing hearing. The claim is based on speculation by defendant's counsel below, and that attorney primarily relied on ambiguous third-party hearsay. There is no evidence of

6.

defendant ever personally claiming to have been absent during the proceedings. For the following reasons, we agree with the People that defendant's claim is not substantiated by the record.

## A. Additional Background

Defendant was ordered to be present at a hearing scheduled for January 13, 2023. The appellate record indicates the trial court and defense counsel expected defendant would appear in person. According to a minute order issued on the scheduled date, the hearing was continued on the court's own motion. The minute order states, in relevant part, "[C]ounsel is to make arrangement for with [*sic*] CDCR to have the defendant appear via zoom. [¶] Finding: Zoom appearance approved for the next hearing. [¶] Defendant ordered to be present at the next hearing." We assume all references to "zoom" and "Zoom" essentially mean a remote appearance by way of video conferencing technology. The record offers no insight into why arrangements were made for defendant to appear remotely instead of in person.

The continued hearing took place as scheduled on April 12, 2023. The following statements were made on the record when the hearing began:

> "[DEFENSE COUNSEL]: Good morning, Your Honor. Jane Boulger on behalf of [defendant], who is appearing via the phone from North County or North Kern prison.
>
> "THE COURT: I think technically, he's appearing via Zoom but by audio only. There's no video.
>
> "[DEFENSE COUNSEL]: There we go.
>
> "THE COURT: And [defendant] has stated off the record right before we called the matter that he was still wanting to go forward by telephone as opposed to waiting for Zoom."

The hearing proceeded with arguments from the prosecutor and defense counsel, followed by the trial court's sentencing decision. The hearing concluded with the court asking, "Anything else that either side would like to put on the record?" Neither side had

7.

anything to add. The trial court never asked any questions of defendant, nor did defense counsel ever indicate defendant had a desire to address the court. A minute order issued on the day of the hearing includes this notation: "Defendant present: Yes—Zoom Audio at North Kern State Prison."

Three weeks later, on May 4, 2023, defense counsel filed a document labeled "Memo For New Hearing [¶] Amendment of Minute Order From April 12, 2023." (Boldface and some capitalization omitted.) The first page of the filing gave notice of a hearing allegedly scheduled for May 16, 2023, and of the intention to move for "a new hearing as to the defendant's re-sentencing pursuant to defendant's right to be present at the hearing." The second page of the filing alleged defendant "was cut off after parties made their appearances and he agreed to use zoom's audio."

Attached to the above-described filing, which we will call a motion for ease of reference, was an eight-paragraph declaration by defense counsel. We reproduce those paragraphs verbatim:

"1. I am a licensed attorney in both the State of California and the Eastern District of California.

"2. I am a sole practitioner practicing criminal law exclusively.

"3. I was appointed to represent [defendant] for a re-sentencing hearing.

"4. I was present on April 12, 2023, when the hearing took place.

"5. The prison where [defendant] is housed has a room used for Zoom court proceedings.

"6. The video was not functioning; however, the audio did project [defendant]'s voice during only one interaction when he was asked to consent to audio-only hearing. His voice was not heard at any time afterwards nor were any background noises from the prison.

"7. As soon as I returned to my office my assistant contacted the litigation department at North Kern Prison where [defendant] is housed.

8.

"8. Officer [S.L.] confirmed by e-mail that the phone, after the initial interaction with the court, played 'hold' music and after approximately two hours on hold [defendant] went back to his unit. [¶] I declare under penalty of perjury that the foregoing is true and correct and if called upon to testify as a witness, I could competently do so."

Missing from the declaration was any reference to attached documents or exhibits. None of the preceding pages of the motion referenced any attachments or exhibits. However, immediately following the declaration was a page containing the words "Attachment A." The next and final page of the motion appeared to be a printout of an e-mail purportedly sent by a North Kern State Prison employee with the initials D.A. to a recipient with the initials M.J. The document did not show an e-mail address for M.J. or explain M.J.'s connection to the case. Readers of the motion were perhaps expected to surmise that M.J. was the "assistant" to whom defense counsel had referred in her declaration.

The e-mail message from D.A. to M.J. consisted of one sentence: "Please see email below." On the bottom half of the page was a copied or forwarded message from "Officer [S.L.]" of the North Kern State Prison to D.A. The body of the message read:

"Hello. I know that [inmate] Thomas BA0357 [defendant] was scheduled for a video hearing with Fresno County from 0800–0900 but there were connection issues so the judge requested to conduct the hearing via landline. [¶] [Defendant] was placed on the call a few minutes later. The phone was left on speaker and I did heard [*sic*] 'hold' music at one point. However approximately two hours later and still on hold [defendant] requested to be escorted back to his housing unit."

The appellate record contains a file-stamped copy of the motion, but there is no proof of service. There are no other documents pertaining to the motion. Nothing in the reporter's transcript or clerk's transcript indicates the motion was ever heard or ruled upon.

### B.     Analysis

"[O]n appeal a judgment is presumed correct, and a party attacking the judgment, or any part of it, must affirmatively demonstrate prejudicial error." (*People v. Garza*

(2005) 35 Cal.4th 866, 881, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant "further bears the burden to provide a record on appeal which affirmatively shows that there was an error below, and any uncertainty in the record must be resolved against the defendant." (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) In other words, error will not be presumed from an ambiguous record.

The People point out, as noted above, that both the reporter's transcript and minute order from the sentencing hearing indicate defendant's remote presence during sentencing. Several weeks after the hearing, defense counsel filed a motion alleging otherwise. But it does not appear the motion was ever served, heard, or ruled upon. Defendant's appellate counsel does not attempt to explain these circumstances, but seemingly expects this court to assume the motion had merit.

Defense counsel did not attest to having personal knowledge of defendant's absence from the sentencing hearing. The attorney declaration implies counsel *suspected* he was absent because she did not hear "any background noises from the prison" during the hearing (though counsel never explained why she did not raise those concerns at the time of sentencing). Counsel's suspicions were otherwise based on hearsay contained in an unauthenticated document.

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Hearsay is generally considered to be unreliable, and for that reason is inadmissible unless an exception applies." (*People v. Myers* (2014) 227 Cal.App.4th 1219, 1226–1227; see Evid. Code, § 1200, subd. (b).) "Documents like letters, reports, and memoranda are often hearsay because they are prepared by a person outside the courtroom and are usually offered to prove the truth of the information they contain." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674.) If a document is offered to prove the truth of matters asserted therein, the document "itself is a hearsay statement made by the person who wrote it." (*Id*. at p. 675.) A document may

10.

contain multiple levels of hearsay, and an exception for each level must be found before the document can be admitted into evidence. (*Id*. at pp. 674–675; Evid. Code, § 1201.)

Regardless of whether a hearsay exception exists for a written statement, the writing must be authenticated before it can be considered as evidence. (Evid. Code, § 1401, subd. (a).) The use of attorney declarations to authenticate exhibits is "routine in law and motion practice" (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 523) but was not done here. Defense counsel made no attempt to authenticate the e-mail messages attached to the motion, nor did counsel explain how the messages could be relied upon for the truth of the hearsay declarant's statements. "The burden of producing evidence to establish these foundational facts fell to defendant as the proponent of the evidence, and in the absence of such foundational evidence, we will not assume [the evidence was admissible]." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 27.)

Even if we could assume the admissibility of the e-mails and the truth of the hearsay, defendant's claim would still fail. The hearsay declarant did not claim personal knowledge of defendant's absence from the hearing. The declarant's notably vague statements raise the question of whether the declarant was with defendant the entire time or only during part of the relevant period. According to defense counsel, defendant's voice could be heard in the courtroom during "one interaction when he was asked to consent to [an] audio-only hearing." The hearsay declarant, in contrast, said, "[T]here were connection issues so the judge requested to conduct the hearing via landline. [¶] *[Defendant] was placed on the call a few minutes later*. The phone was left on speaker and I did heard [*sic*] 'hold' music *at one point*. However approximately two hours later and still on hold [defendant] requested to be escorted back to his housing unit." (Italics added.) Admissibility issues aside, this evidence does not affirmatively prove defendant was absent from the sentencing hearing.

11.

## II. Section 1385's "Childhood Trauma" Provision Is Not Applicable

Under section 1385, subdivision (c)(2)(E), the circumstance of a current offense being "connected to prior victimization or childhood trauma" weighs greatly in favor of dismissing any related sentencing enhancements. Defendant complains of the trial court's failure to acknowledge "that [he] suffered childhood trauma that impacted his conduct during the crime." As we explain, the argument is misguided.

### A. Additional Background

Defendant's sentencing memorandum contained the following allegations: "[Defendant] … suffered many traumas as a child that we now know caused serious effects on one's behavior. [Defendant's] parents passed away and he was put in foster care. His father's death was drug related. His mother was in and out of prison[,] suffered from drug addiction and ultimately died from complications of AIDS." The quoted statements were unverified and appeared in the body of the memorandum.

Attached to the sentencing memorandum were several unauthenticated documents, including excerpts from a handwritten letter. The excerpts were undated and unsigned and did not identify the author. As relevant here, the letter contained these statements: "I want to be the father to my son that I've never had. I think if I would have had parents in my life things would have been different. … I would like to be there for [my son] so he [doesn't] go through the childhood trauma that I went through growing up."

During the sentencing hearing, defense counsel said the letter was written by defendant. Counsel also made the following statements: "[B]oth his parents died, had died, you know, slow deaths, especially his mother was—she wasn't taking medication because she was using and she was—she suffered greatly. It is just by chance that he ended up with these wonderful people that call themselves his parents now. Just by chance. And he was very fortunate. He has support from them."

12.

## B.     Analysis

"It is axiomatic that the unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11; see, e.g., *People v. Manibusan* (2013) 58 Cal.4th 40, 55 [unsworn statements of counsel in defendant's motion held "insufficient" to support the motion].) As such, the trial court was not obligated to accept as true the unverified statements of defense counsel in the sentencing memorandum and at the hearing. Defendant's appellate counsel has not provided any record citations that would substantiate the defense attorney's unsworn allegations. We have searched the current appellate record, as well as the records in *Thomas I* and *II*, and have found nothing corroborative of those statements. We do note the probation report says defendant was raised by a "'[f]amily friend'" and that both of his parents are deceased.

Even accepting all of defense counsel's statements as true, as well as the statements in defendant's handwritten letter, the mitigating circumstance of "childhood trauma" is not established. Defendant cites and relies upon section 1385, subdivision (c)(2)(E), but fails to acknowledge or discuss the explanatory language of subdivision (c)(6)(A):

> "'Childhood trauma' means that as a minor the person experienced physical, emotional, or sexual abuse, physical or emotional neglect. A court may conclude that a defendant's childhood trauma was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts, the court concludes that the defendant's childhood trauma substantially contributed to the defendant's involvement in the commission of the offense."

On a silent record, appellate courts imply all findings necessary to support a trial court's sentencing decision. (See, e.g., *People v. Kelly* (2018) 28 Cal.App.5th 886, 904.) We thus presume the trial court found the defense either failed to prove the allegation of childhood trauma or failed to establish the necessary causal connection to the attempted murder. The implied finding is supported by the lack of evidence that defendant suffered

13.

abuse or neglect, and the lack of an affirmative finding of the requisite connection to defendant's criminal behavior. (Not only did the defense fail to present evidence of prior abuse, but the probation report says defendant previously denied "experiencing any form of abuse during his childhood.")

We do not mean to trivialize whatever difficult circumstances defendant may have experienced in his youth. "Childhood trauma" has a specific legal meaning for purposes of section 1385, and the defense allegations fell short of meeting that definition. The defense also made virtually no effort to show, and thus failed to demonstrate, that defendant's childhood experiences "*substantially contributed* to [his] involvement in the commission of the offense." (§ 1385, subd. (c)(6)(A), italics added.) Instead, defense counsel simply argued it was significant that defendant "was not the initial aggressor" because "when you have childhood trauma[,] … you're always, always, on the highest level of just anxiety and being aware." Counsel then alleged, without any supporting evidence, that "it's shown through tests as far as their cortisol levels and everything."

Consequently, the mitigating circumstance of "childhood trauma" under section 1385, subdivision (c), was not established.

## III.    The Trial Court Acted Within Its Discretion

### A.    Additional Background

In the letter attached to his sentencing memorandum, defendant expressed remorse and claimed to have matured in prison. Defendant's appellate counsel submits that he "wrote eloquently on his own behalf," which is a fair statement. There is nothing in the record to indicate the trial court disbelieved or doubted the sincerity of the letter.

Defendant's letter also discussed his efforts at rehabilitation and personal growth, including his progress toward a college degree through a full-time distance learning program. The sentencing memorandum included additional documents that appeared to be prison records and certificates, which indicated defendant's successful completion of

14.

various rehabilitative programs between 2018 and 2022 (accounting for pretrial detention, he has been incarcerated since October 2014).

For purposes of this discussion, we will ignore defense counsel's failure to authenticate the above-referenced documents and failure to address hearsay issues. The People did not object to the documents, and the trial court appears to have considered and relied upon them. During the hearing, the trial court noted defendant was 25 years old when he committed the offenses and is eligible for youth offender parole (see § 3051, subd. (b)(3)). While discussing his eligibility for early parole, the court remarked, "I think the conduct that he's engaging in now still can bode well for him getting out, [i.e.,] not having to serve that full time."

### B.      Analysis

A mitigating circumstance listed in section 1385 "weighs greatly in favor of dismissing [a sentencing] enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Id*., subd. (c)(2).) If imposing an enhancement "could result in a sentence of over 20 years[,] … the enhancement shall be dismissed." (*Id*., subd. (c)(2)(C).) The appellate districts have interpreted the quoted language in different ways, creating a split of authority now under review by the California Supreme Court.

One view holds the "mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement—with the resultingly shorter sentence—would endanger public safety." (*People v. Walker* (2022) 86 Cal.App.5th 386, 391, review granted Mar. 22, 2023, S278309.) The opposing view is that enhancements may be imposed without a public safety determination, even if one or more of the mitigating circumstances are established. (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1096–1098, review granted Apr. 12, 2023, S278894.) A third approach essentially makes public safety a threshold determination. Thus, "if the court finds that dismissal of an

15.

enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296.)

It is unnecessary for us to endorse one interpretation of section 1385 over another. Despite the split of authority, case law uniformly holds that mitigating circumstances do not automatically require dismissal of an enhancement. (See *People v. Cota* (2023) 97 Cal.App.5th 318, 335 [the argument for mandatory dismissal "has been rejected by every court that has considered it"].) To be clear, defendant's claim would fail under any of the various interpretations of section 1385, subdivision (c).

Defendant frames the issue in terms of whether the trial court abused its discretion by refusing to dismiss the gun enhancement. Defendant also contends the trial court's finding of dangerousness is "not supported by the record," but that argument really concerns the balancing of competing factors. The weighing of considerations for and against a particular sentencing choice is a matter of judicial discretion. (See *People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1588 ["The trial court has broad discretion in weighing the aggravating and mitigating factors"].)

"The abuse of discretion standard is highly deferential." (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 298.) "That deferential standard asks not whether the trial court's decision was *correct* in the sense that it is the same decision we would have made; rather, it asks whether the court's decision falls within the range of outcomes permitted by the controlling law." (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170.) A discretionary sentencing choice will be upheld "so long as there is a reasonable or even fairly debatable justification" for it. (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.) "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.)

Under section 1385, the dismissal of an enhancement will "endanger public safety" if there is "a likelihood that the dismissal … would result in physical injury or

16.

other serious danger to others." (*Id*., subd. (c)(2).) A trial court's finding of such a likelihood may be based upon the circumstances of the current offense. (See, e.g., *People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 298.) In *Mendoza*, the sentencing court's finding of dangerousness and its refusal to dismiss a firearm enhancement was based on the appellant's use of a gun during a residential robbery. The appellant had "held the gun barrel against the chest of one of the victims" before firing a bullet into a nearby television set, and then "re-aimed the gun" at the victim while demanding his money. (*Mendoza*, at p. 291.) The appellate court affirmed the sentencing court's ruling.

Defendant attempts to distinguish *Mendoza* by noting the dismissal of the enhancement in that case would have resulted in the appellant's immediate release. We are not persuaded. The *Mendoza* appellant had already served approximately 15 years (more than half of the originally imposed sentence) and "asked the [sentencing] court to take into consideration the rehabilitative efforts he [had] made in prison, which he claimed included … participation in numerous self-help groups." (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 292.) The appellate court noted the claimed rehabilitative efforts were not corroborated by additional evidence, but it does not appear that made a difference in the sentencing court's decision. The opinion states, in relevant part:

> "[T]he [sentencing] court considered that Mendoza discharged a gun with victims present in a residence during a home invasion robbery, and the court found that the circumstances involved 'incredibly harmful and dangerous conduct.' The court explained that a person who 'commit[s] this type of an offense is a serious threat to society and a relatively long prison sentence is necessary to protect the public and keep the defendant away from the public and to provide time for the defendant to become rehabilitated.' Given the court's consideration of the circumstances of the crime and the court's determination that a long sentence was necessary for Mendoza to become rehabilitated after committing such a crime, we cannot say that the court's determination that dismissal of the enhancement 'would endanger public safety' [citation] was 'so irrational or arbitrary that no reasonable person could agree with it' [citation]." (*Mendoza*, *supra*, at p. 299, quoting § 1385, subd. (c)(2) and *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Here, although victim M.D. could be viewed as an instigator or initial aggressor, defendant shot him as he was trying to retreat. Moreover, defendant was attempting to commit an armed robbery when the victim began driving away. Defendant reacted by firing a bullet into the victim's chest at close range, very nearly killing him. Although defendant's prior adult criminal record was relatively insignificant, he was on probation at the time of the shooting. It was not unreasonable for the trial court to view defendant's conduct as "egregious" and "extraordinarily serious as far as what happened when the gun was used." The circumstances of the offense could be viewed as worse than those in *Mendoza*, and they support the finding of dangerousness within the meaning of section 1385, subdivision (c)(2).

Conduct in prison is one of many factors a trial court may consider in deciding whether to dismiss an enhancement. (*People v. Yanaga* (2020) 58 Cal.App.5th 619, 627.) Defendant's commendable self-improvement efforts are probative of rehabilitation but not overwhelmingly compelling of the conclusion he has fully reformed. The trial court's finding of dangerousness based on the facts of the attempted murder, despite some evidence of rehabilitation and a mitigating circumstance under section 1385, subdivision (c) was not "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

## DISPOSITION

The order is affirmed.

PEÑA, J.

WE CONCUR:


HILL, P. J.


DE SANTOS, J.

18.